(21 Misc. Rep. 386.)

### SMITH v. HOWLETT et al.

(Supreme Court, Special Term, Onondaga County. October, 1897.)

**1. TRUST—TERMINATION BY AGREEMENT.**

The relation of trustee and cestui que trust existed between plaintiff and defendant, and an agreement was made whereby the trust fund was to be paid to plaintiff, and the trust terminated. A few days thereafter defendant transferred to plaintiff, in lieu of such trust fund, a bond and mortgage. *Held*, in an action to rescind the transfer, that the relation of trustee and cestui que trust was not terminated by such agreement.

**2. SAME—TRANSACTIONS WITH BENEFICIARY.**

The burden is on the trustee seeking to sustain a business transaction with his cestui que trust to show, not simply that it has been free from any affirmative actual fraud, but that it has been entered upon by the latter knowingly and intelligently, and is fair and equitable.

**3. SAME—RESCISSION OF CONTRACT.**

In an action to rescind a contract and transfer between a trustee and his cestui que trust, where the property transferred is worth less than half the trust fund which the trustee kept in payment, the court will set aside such transfer, in the absence of a ratification, where plaintiff is an old man, unfamiliar with business, and totally ignorant of the character of the property conveyed, except as to such representations as may have been made by the trustee.

**4. SAME—RATIFICATION BY BENEFICIARY.**

The fact that, upon default made in the bond and mortgage, plaintiff placed same in hands of an attorney, who foreclosed and sold the premises, and procured a judgment of deficiency against the obligors, upon which an execution was issued, and returned wholly unsatisfied, will not ratify the transaction, in the absence of evidence showing plaintiff had acquired further knowledge of the value of the bond and mortgage than he had when it was transferred to him, when there is no injury to defendant thereby.

**5. RESCISSION OF CONTRACT—TENDER.**

In an equitable action to rescind a contract, it is not essential that a sufficient tender back of the property be made; the court will take into consideration the offers made before trial, at the trial, and in the pleadings, and make proper provisions in the judgment therefor.

Action by Daniel S. Smith against Alfred A. Howlett and Ella E. Craig. Judgment for plaintiff.

Edward C. Wright, for plaintiff.
White & Cheney, for defendant Howlett.

HISCOCK, J. In this case I regard the following facts, among others, as satisfactorily established by the evidence, many of them without dispute: On and prior to April 5, 1890, the defendant Craig was the owner of a house and lot, subject to a life estate of plaintiff therein. Upon said date an agreement was made by said persons and defendant Howlett, whereby, in substance, it was agreed that said premises should be sold for the sum of $12,000, and the proceeds placed in the hands of the latter as trustee, he paying the income thereon and such portions of the principal as the defendant Craig should consent to, during life, to the plaintiff, and the balance upon the death of the latter to said Craig. Said funds were so placed and continued in the possession of said Howlett as such trustee until on or about July 7, 1896, he having in the meantime, in accordance with the trust agreement, paid to the plaintiff the income and $500 of the principal of said sum. On or about the last-mentioned date, an agreement was made between said three persons, which, among other things, provided, in substance, that said trust fund should be distributed, $6,000 being paid in money to the defendant Craig as her share, and the balance, of $5,500, to plaintiff, "by the assignment to him of a certain bond and mortgage executed by Caroline L. Alvord and James D. Alvord, her husband, to Alfred A. Howlett, for the sum of seven thousand dollars," and on which there was said to be then unpaid the sum of $5,500 and certain interest, and the trust terminated. This bond and mortgage is the subject of the present controversy. In November, 1889, the defendant Howlett had sold a farm in Oswego county to the Alvords for the sum of $7,000, and taken back this bond and mortgage to himself individually for the full purchase price. At some time thereafter, he, as an individual and without the consent of plaintiff, had transferred the same to himself as trustee. At the time of its transfer to plaintiff, the mortgagors were in default in the payment of interest. Before the transfer to him, plaintiff, upon one or two occasions, went to Oswego county for the purpose of examining the farm; but his examination was so brief and superficial as to make it apparent that he either did not appreciate the significance of his errand, or else that he relied upon other assurances and guaranties rather than upon his own judgment. Moreover, he does not appear to have been at all versed in the values of farming lands, and was thoroughly disqualified, by age and experience, from passing intelligently upon this subject. The lands, as a matter of fact, at the time, were not worth half the amount of the mortgage, and the mortgagors were utterly irresponsible. After the transfer to him, being unable to collect the interest, plaintiff placed the bond and mortgage in the hands of his attorney for collection; and obtaining a judgment of foreclosure and sale, in the forepart of De-

cember, 1896, the premises were sold, and bid in by plaintiff for the sum of $2,600, the defendant Howlett being represented upon the sale, and bidding up to about $2,500. Subsequently a judgment for deficiency was entered against the mortgagors, upon which an execution was issued, and returned wholly unsatisfied. At the time of the transaction between plaintiff and defendant Howlett with reference to the transfer by the latter to the former of his bond and mortgage as in payment of $5,500, plaintiff was about 80 years old, and, as he appeared upon the trial, somewhat rambling in his mental operations. He was a dentist by profession, and of no general business experience, and was not represented in the transaction by any attorney or other adviser than Mr. Howlett.

In addition to the foregoing facts, it is claimed by plaintiff, and denied by defendant, that the latter, before and at the time of the transfer, made affirmative representations as to the value of the land covered by the mortgage, and as to the responsibility of the obligors in the bond, which have since been proved to be incorrect. Without going to the extent urged by plaintiff, I think that not only the evidence introduced in his behalf upon this point, but also the testimony of the defendant himself in regard to the necessity for him to cash the mortgage, and in regard to what he considered it worth, leads to the conclusion as a reasonable one that assurances in some form were given to the plaintiff in regard to the value of the securities. Very soon after the return of the execution as above, plaintiff brought this action, to have the transfer of the bond and mortgage to him in satisfaction of the amount above stated rescinded, and several defenses are urged by the defendant Howlett, the defendant Craig answering, but not appearing upon the trial.

It is urged in the first place that the agreement to terminate the trust between plaintiff and defendant having been made and entered into July 7, 1896, and the bond and mortgage not having been assigned until several days later by defendant to plaintiff, the relation of trustee and cestui que trust had been terminated by the agreement, and did not exist at the time of or enter into the transfer in question. I think this contention, however, calls for altogether too narrow a view of the transactions. The transfer of the bond and mortgage was part of the consideration which entered into the agreement terminating the trust; was expressly contemplated by and referred to in said agreement; and, in the receipt which plaintiff gave to defendant for the bond and mortgage when assigned, the defendant Howlett is expressly treated and named as trustee. I have no doubt, therefore, that the relation of trustee and cestui que trust did exist, as claimed by plaintiff, and that the case is to be decided between the parties upon that theory.

The sharpest dispute of fact between the parties as above stated is upon the question whether the defendant, in whole or part, induced plaintiff to take the bond and mortgage by affirmative false statements as to its value. I have indicated my views upon this point. I do not, however, regard this action as necessarily involving the issue of actual fraud, or plaintiff's case as necessarily dependent upon his establishing the affirmative thereof against de-

fendant. Even if I should disregard this feature of affirmative representations, the issue, in my opinion, is fairly presented upon the other evidence in the case whether the transaction between plaintiff and defendant was such a one as a court of equity will sustain between a trustee and his cestui que trust; and upon that issue my conclusions are in accordance with the contention of plaintiff, that it is not such a one. Defendant was the trustee of a man whose situation and condition I have sufficiently described. As such, he was under the undisputed obligation to pay over $5,500 of trust funds. He has given, instead of money, a bond and mortgage, which had been, and as against plaintiff still were, the trustee's own property, and not a legal trust investment. That security was worth and has realized for the cestui que trust only $2,600, and, if the transaction should stand, defendant has without any adequate reason settled a fiduciary obligation at less than one-half its amount. A transaction with this and the other incidents disclosed by the evidence is, it seems to me, disapproved of by decisions and principles applicable to the confidential relation which defendant sustained to plaintiff, and which settle too thoroughly for question even that the burden rests upon a trustee seeking to sustain a business transaction with his cestui que trust to show, not simply that it has been free from any affirmative actual fraud, but that it has been entered upon by the latter knowingly and intelligently, and is fair and equitable.

I pass now to a consideration of some of the more technical defenses urged by the defendant, taking up first the one whereby it is insisted that plaintiff has with knowledge so dealt with the property assigned to him as to have ratified that transaction, whatever its original character may have been, and to have estopped himself from questioning it in this action. Some time after receiving the bond and mortgage in question, the interest thereon not having been paid, plaintiff placed the same in the hands of his attorney for collection; and, on or about October 14th, a decree of foreclosure and sale thereupon was obtained. Under such judgment, the premises covered by the mortgage were duly advertised for sale, and upon December 7th sold and struck off to plaintiff. A judgment for deficiency against the obligors in the bond was entered December 12th, upon which, on December 15th, an execution was issued, which subsequently, and on or about December 26th, was returned wholly unsatisfied, and immediately thereafter this action was commenced. There is no evidence to indicate that, at the time he commenced his foreclosure suit and procured his judgment of foreclosure and sale, plaintiff had acquired any knowledge about the bond and mortgage other than that possessed by him when it was transferred. November 27th, however, his attorney wrote a letter to the defendant, of the substantial part of which the following is a copy:

"As the time approaches for the sale of the Alvord property, in Oswego county, we have become more and more convinced that the property will not sell for nearly the amount of the mortgage. The latest statement that we have had from there is that the property is not worth over $1,500, and from all that I can learn the bond of Mrs. Alvord is worthless. The doctor wishes me to say to you that he took this bond and mortgage entirely on your statements as to

the value of the property and of the bond; and, as you were holding this money as trustee, it seems to me very probable that you will be held responsible for the result of any statement made by you at the time of the transfer. We are willing to make any arrangement that you may desire with reference to the sale, but the doctor will certainly hold·you responsible in case the property should not sell for a larger sum than stated above, and he will undoubtedly hold you responsible for any deficiency that may occur by reason of his having taken the mortgage instead of the money which you held as trustee."

No action being taken by defendant in response to this letter, plaintiff's attorney, upon the day of sale, made a somewhat informal tender to him of the decree in foreclosure, bond, and mortgage, etc., which defendant refused to accept. Because, after possession of the information indicated by the foregoing letter and acts, plaintiff proceeded with his sale and judgment for deficiency, it is claimed that he has so brought himself within the principles applicable to a voidable transaction as to have perfected it between himself and defendant. It is claimed that plaintiff has confirmed the transaction between him and defendant, although originally voidable, and cannot now attack it.

The question of waiver is largely one of intent. The very basis of a ratification such as is claimed here is that the acts from which it is to be inferred are consistent only with the theory that the party performing them has voluntarily and intentionally elected to ratify and stand upon the transaction in question. If the acts performed are as consistent with some other theory, then ratification is not to be found, certainly, as a conclusion of law. It seems to me that the acts pointed to in this action can be quite as well explained upon the theory urged by plaintiff's attorney, namely, that plaintiff wished to determine in a perfectly proper and legal way whether the bond and mortgage were really worth the sum for which he had taken them, and which could be determined in no other way as effectually and completely as by proceeding to a public sale and judgment for deficiency. Plaintiff certainly had the right to ascertain in any reasonable way whether the bond and mortgage were worth the amount at which they had been passed to him before questioning the transfer and defendant's action therein. Because he had received some information indicating that they were not of the value claimed, he was prevented from, if possible, gathering still more. There was no test by which he could ascertain their real value so complete and well recognized as to have in the case of the real estate a public sale, and in the case of the personal liability of the obligors a judgment and execution. Of course, if, in acquiring the information furnished by these tests, the property had so passed from his control that he could not restore it to defendant, he very likely would have been prevented from maintaining the action in question, but this has not happened. It is not claimed that defendant has in any way been injured by the steps in question, or that plaintiff has been prevented thereby from in any manner restoring to him the property originally transferred as completely as though made before the sale. Neither can it be said that there has been any element of speculation or experimenting in determining through what course the greater profit could be realized.

The amount which plaintiff could in any event secure by his legal proceedings was the amount of the bond and mortgage, and that also was the sum which fixed and measured defendant's liability, if any existed. Adair v. Brimmer, 74 N. Y. 539; Coal Co. v. Sherman, 30 Barb. 575. Again, prior to the date when he is to be charged with any information or knowledge acquired after the transfer, plaintiff had commenced a foreclosure of his mortgage, proceeded to judgment, and caused the premises to be advertised for sale. To hold that because, after receiving any information to be imputed under the letter of his attorney to defendant dated November 27th, instead of dropping his proceedings theretofore commenced in their very midst, he completed the act already commenced, and carried them to an orderly completion and to the ordinary stopping place of such proceedings, he is to be charged with having ratified the transaction between him and defendant, would, I think, be applying the principles of a prompt rescission more rigidly than has been done in any authority called to my attention.

It is further urged by defendant that no sufficient tender back to him of the property received under the transaction sought to be set aside has been made by plaintiff, and especially that no tender back or offer to return has been made of $50, collected by plaintiff upon the bond and mortgage. It is true that the tenders made by plaintiff through his attorney have been somewhat informal, and have not in any case covered the item of money in question. This, however, is not so serious a matter in this action at equity as it would be in one at law to recover damages. It is pretty broadly held that in an action of this character, independent of any tender or offer to restore before action brought, the court may, by its judgment, provide for and take care of all the conditions which should be attached to the relief granted. Taking into account the tenders and offers to restore made before the trial, at the trial, and in the complaint, this can, undoubtedly, be amply done in this case by proper provisions in the judgment requiring plaintiff to restore to defendant the property transferred, and to pay back any moneys collected thereon, or, what will be the equivalent, credit the same upon the amount for which defendant will be required to account. Allerton v. Allerton, 50 N. Y. 670; Gould v. Bank, 86 N. Y. 75, 83; Fisher v. Bishop, 108 N. Y. 25, 30, 15 N. E. 331.

The suggestion is made in defendant's brief that there was no offer whatever made to restore to defendant the amount of money which he had paid over to his other cestui que trust, the defendant Craig. It does not seem to me, however, that this was or is necessary, or that her rights in any way complicate or interfere with plaintiff's. The agreement of July 7, 1896, provided, in substance, for a division of the trust fund then in defendant's hands into two entirely independent parts, one of which should be paid to the defendant Craig, and the other to the plaintiff, upon which the defendant's trust should be terminated, and he released. He has performed his agreement with the defendant Craig, and he is credited therefor. This action affects only so much of said agreement as

relates to the manner in which defendant should pay to plaintiff the amount provided in said agreement. There seems to be no difficulty in correcting that part of the contract between plaintiff and defendant which provided that the Alvord bond and mortgage should be a complete payment of the moneys to be paid without in any manner disturbing the transactions between Mr. Howlett and the defendant Craig. In accordance with the foregoing views, judgment is ordered for the plaintiff.

Judgment for plaintiff.